PEMBINA TREATY COMMITTEE; Mary Cornelius; Alice Siroti; Juliane Wilkie; Flora Redding, Appellants,

v.

Manual LUJAN, in his official capacity as Secretary of the Interior; Jerry Jaeger, in his official capacity as Aberdeen Area Director of the Bureau of Indian Affairs; Doreen Bruce, in her official capacity as Acting Superintendent of the Turtle Mountain Agency, Bureau of Indian Affairs; Indian Health Service; Turtle Mountain Band of Chippewa Indians, Appellees.

No. 92–1645.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 9, 1992.

Decided Dec. 4, 1992.

motion for judgment n.o.v.  Fed.R.Civ.P. 50(b) and 59.

Vance Gillette, Devils Lake, N.D., argued for appellants.

Robert L. Klarquist, Washington, D.C., argued for Lujan (Barry M. Hartman, Thornton W. Field and John T. Stahr, on brief).

Mason D. Morisset, Seattle, Wash., argued for Turtle Mountain Band of Chippewa Indians.

Before McMILLIAN, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

As the result of a lawsuit several years ago, the U.S. Treasury and the Congress set aside approximately $52 million to be distributed to five groups of Pembina Chippewa Indians. One of those groups is the Turtle Mountain Band, a federally recognized tribe living in North Dakota. By statute passed in 1982, Congress established a mechanism for distributing the money. Under the act, 80 percent of the money allocated to the Turtle Mountain Band was to be distributed directly to members of that tribe. The remaining 20 percent was to be held in trust and invested by the Secretary of the Interior for the benefit of the tribe. Interest from the money held in trust is to be disbursed to the governing body of the tribe "on an annual budgetary basis subject to the approval of the Secretary" for tribal administration or social and economic programs. *See* Pub.L. No. 97–

---

* The HONORABLE DANIEL M. FRIEDMAN, Senior Circuit Judge for the Federal Circuit, sitting by designation.

403, § 3, 96 Stat. 2022, 2022–23 (Dec. 31, 1982).

Pursuant to that law, the federal trustees for the trust money released approximately $4.4 million in interest to the tribal council of the Turtle Mountain Band in early 1989 and approximately $3.7 million in interest in the summer of 1991. Shortly thereafter, a group of individual tribe members, known as the Pembina Treaty Committee, sued for a declaratory judgment that the federal trustees had breached their fiduciary duty by their failure to require an annual budget from the tribal council before releasing the money. The plaintiffs also asked the trial court to declare that the tribal council's spending plan for 1991 was invalid and for orders requiring any money unspent by the tribal council to be held in escrow pending the adoption of a valid spending plan by the federal trustees and requiring an accounting from the trustees of the amount anticipated to be available every year in interest disbursements. The plaintiffs also asked for a preliminary injunction effecting the relief prayed for. Defendants named in the suit were the Secretary of the Interior, various officials of the Bureau of Indian Affairs, and the Turtle Mountain Band itself.

The tribe moved for its dismissal from the suit on the ground of sovereign immunity. The federal defendants then moved for dismissal of the entire complaint, asserting that the tribe was an indispensable party. See Fed.R.Civ.P. 19(b). The trial court granted both motions. The plaintiffs appeal. The only issue on appeal is whether the trial court abused its discretion in dismissing the entire complaint due to the inability to retain the Turtle Mountain Band as a defendant. We affirm the trial court.[1]

## I.

█ It is apparently undisputed that the tribe itself has sovereign immunity. See, e.g., Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, ———— ————, 111 S.Ct. 905, 909–10, 112 L.Ed.2d 1112 (1991), and Santa Clara

Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). It is also undisputed that the tribe has not waived its immunity in regard to this lawsuit. The issue, then, is whether the tribe must be a party to the suit in order for the suit to proceed.

Under Fed.R.Civ.P. 19(a), the tribe should be a party to the suit, if feasible, if complete relief cannot be accorded to the plaintiffs without the tribe's inclusion or if the tribe claims an interest relating to the suit that could not be adequately protected if the tribe did not participate in the suit. The plaintiffs argue that because their prayer for relief asks only for a declaration of the federal trustees' duties, complete relief could be available to the plaintiffs without involving the tribe itself. In contrast to their argument, however, the plaintiffs' complaint specifically requests the court to invalidate the tribal council's spending plan for 1991 and to order the tribal council to place in escrow any unspent money until a valid spending plan is approved.

In their brief, the plaintiffs declare that they "expressly limit their request for relief" as being against the federal trustees and not against the tribe, "if any confusion remains." They further complain that they could have made this limitation explicit if only the trial court had granted them a hearing on the motions to dismiss. The record contains no indication, however, that they actually requested a hearing in the trial court. In any case, the trial court was within its discretion to decide the motions without a hearing. See Fed.R.Civ.P. 43(e).

The trial court found that the plaintiffs could not obtain the complete relief they sought unless the tribe was a party. See Fed.R.Civ.P. 19(a)(1). The trial court also found that the tribe had an interest in the trust disbursements that could not be adequately protected if the tribe did not participate in the suit. See Fed.R.Civ.P. 19(a)(2). The trial court found, therefore, that the tribe should be a party under ordinary circumstances and turned to the real issue—

1. The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

whether, since the tribe was immune from suit, the suit should proceed at all without the tribe as a party.

## II.

Under Fed.R.Civ.P. 19(b), if the tribe cannot be made a party, the trial court "shall determine whether in equity and good conscience" the suit should proceed at all. Under the rule, the matters that the trial court should consider are "to what extent a judgment rendered in the [tribe's] absence might be prejudicial to the [tribe] or those already parties," "the extent to which ... the prejudice can be lessened or avoided" by careful drafting of any judgment, "whether a judgment rendered in the [tribe's] absence will be adequate," and "whether the plaintiff will have an adequate remedy if the action is dismissed." The standard of review for this determination by the trial court is abuse of discretion. *See, e.g., South Dakota v. Bourland,* 949 F.2d 984, 989 (8th Cir.1991), *cert. granted,* —— U.S. ——, 113 S.Ct. 51, 121 L.Ed.2d 21 (1992). The trial court's ultimate conclusion, after a review of these considerations, was that any judgment against the federal trustees would jeopardize the tribe's ability to use money that had already been disbursed to it under spending plans that had already been approved and would thus imperil the tribe's right to self-governance. The trial court concluded that the plaintiffs would have no other recourse if the suit was dismissed, but found that the tribe's interest in maintaining its sovereign autonomy outweighed the plaintiffs' interest in being able to litigate this claim.

The gist of the plaintiffs' protest is that the federal trustees failed to require some sort of annual budget from the tribe in 1991 and disbursed interest money merely upon request by the tribe, without adequate monitoring by the trustees of the purposes for which the money was requested and for which it eventually was spent. The plaintiffs concede that once money has been disbursed, the tribe has the power to spend it. The plaintiffs argue, however, that as to interest money not yet disbursed,

a declaration that the federal trustees must follow certain procedures before disbursement will not jeopardize the tribe's right to self-governance in any manner. The plaintiffs seem to argue, in addition, that the federal trustees may be required to hold public hearings and develop some type of long-range plan pursuant to a separate statute governing distribution of money to Indian tribes. *See* 25 U.S.C. §§ 1401–1408. The plaintiffs cite various cases in which courts have held that a tribe was not an indispensable party under Fed.R.Civ.P. 19(b), all of which are distinguishable from this one.

The tribe argues that the tribal council did, in fact, submit distribution plans for the interest money in both 1989 and 1991, that those plans were approved by the federal trustees, and that the plaintiffs' grievances are essentially tribal political ones. The tribe also argues that any declaration of the illegitimacy of disbursements already made or spending plans already approved, or any restrictions placed on money already disbursed, would fatally compromise the tribe's sovereign autonomy. Finally, the tribe argues that even a declaration as to procedures to be followed by the federal trustees in the future would impair the tribe's right to self-governance and that any hearings required by 25 U.S.C. §§ 1401–1408 have already been held. The federal defendants essentially adopt the arguments of the tribe.

The plaintiffs have correctly recognized that any order purporting to affect money already disbursed would be an impermissible encroachment on tribal sovereignty. *See, e.g., Confederated Tribes of Chehalis Indian Reservation,* 928 F.2d 1496, 1499 (9th Cir.1991), and *Wichita and Affiliated Tribes v. Hodel,* 788 F.2d 765, 774, 777–78 (D.C.Cir.1986). We therefore turn directly to the issue of whether a declaratory judgment as to procedures that the federal trustees should follow in the future would be such an encroachment.

It is instructive to note that the statute governing these particular trust funds has no specifics as to procedures required. It says only that the "governing body" of the

Turtle Mountain Band "is authorized to use the interest and investment income accrued [on the money held in trust], on an annual budgetary basis subject to the approval of the Secretary" for tribal administration or social and economic programs. *See* Pub.L. No. 97–403, § 3, 96 Stat. 2022, 2022–23 (Dec. 31, 1982). Nor are the other statutes cited by the plaintiffs germane. Those statutes, *see* 25 U.S.C. §§ 1401–1408, are specifically excepted from applicability to the trust money at issue in this case. *See* Pub.L. No. 97–403, § 1, 96 Stat. 2022, 2022 (Dec. 31, 1982). It is unclear to us, then, what criteria other than, perhaps, general due process constraints would govern an evaluation of the adequacy of the federal trustees' actions. The statute gives no clue as to how a court should construe the language allowing use of the money "on an annual budgetary basis" or the language stating that the annual budgetary basis is "subject to the approval of the Secretary."

In any case, we affirm the trial court's determination that the tribe is an indispensable party, because the tribe would have to abide by any process devised by the federal trustees that requires some sort of "annual budgetary" submission that has to be approved by the trustees. The tribe obviously has an interest in what that process is, and that interest will not be protected by any other person already a party. The plaintiffs, moreover, have not shown that the federal trustees have in fact failed to require some sort of annual budgetary submission from the tribe. The exhibits submitted by the plaintiffs themselves include copies of spending plans, with broad categories of expenditures noted, for both 1989 and 1991. It is true that the latter spending plan is dated August, 1991, and that at least one disbursement was made in June, 1991, · in anticipation of "the plan being developed that [would] be submitted in the near future." Even so, we do not believe that the trial judge abused his discretion in determining that the tribe had such an interest in the questions at issue in this suit that the suit should not proceed if the tribe could not participate.

We believe that the plaintiffs' real objection is to the allocations made by the tribal council among various types of expenditures. This is a political difficulty that must be redressed, if at all, through tribal political processes or the tribal courts.

### III.

Accordingly, we affirm the judgment of the tribal court.